UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT PIZARRO,<br><br>                              Movant,<br><br>              -against-<br><br>UNITED STATES OF AMERICA,<br><br>                         Respondent. | 24-cv-2414 (AS) |
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>              -against-<br><br>ROBERT PIZARRO,<br><br>                         Defendant. | 17-cr-151 (AS)<br><br><u>OPINION AND ORDER</u> |

ARUN SUBRAMANIAN, United States District Judge:

Before the Court are four motions filed by *pro se* litigant Robert Pizarro. In his criminal case, Pizarro filed a motion for relief from the final judgment under Federal Rule of Civil Procedure 60(b). Dkt. 486 (17cr151). He also filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Dkt. 1 (24cv2414). Pizarro moves for discovery related to his § 2255 motion, Dkt. 483 (17cr151), as well as an evidentiary hearing, Dkt. 35 (24cv2414). For the following reasons, the motions are DENIED.

## BACKGROUND

The Court summarizes the circumstances of Pizarro's convictions here based on the thorough discussion in Judge Nathan's opinion denying Pizarro's post-trial motions. *See United States v. Pizarro*, 2019 WL 3406603, at *1–4 (S.D.N.Y. July 29, 2019).

### I.    The Robbery, Kidnapping, and Murder of Robert Bishun

On September 26, 2018, a jury convicted Robert Pizarro and Juan Rivera on multiple counts for their involvement in the kidnapping, robbery, and murder of a federal cooperating witness, Robert Bishun. Bishun, who owned an autobody shop, had been a heroin dealer and became a federal informant after he was arrested in 2012. Pizarro and others had repeatedly targeted Bishun to rob him of drug proceeds.

In 2015, Pizarro and another man, wearing masks and brandishing firearms, stole approximately $10,000 in cash from Bishun's shop after binding their victims with zip ties. Police officers who arrived at the scene recovered a Home Depot receipt for zip ties purchased on January 10, 2015, and a plastic bag containing zip ties with Pizarro's fingerprints on the bag. Cell-site evidence confirmed that Pizarro was near the Home Depot where the zip ties had been purchased, and Home Depot surveillance footage showed an individual who looked like Pizarro purchasing zip ties on January 10, 2015. Cell-site data also placed Pizarro around the shop at the time of the 2015 robbery.

Pizarro and two others, Kasheen Samuels and Philip Haynes, planned to rob Bishun again in April 2016. Haynes, who testified at trial, explained that Pizarro, Samuels, and Haynes abandoned the plan after becoming concerned that the car they had been using for stakeouts had been noticed.

In August 2016, Pizarro and Rivera began staking out Bishun's shop, using a black GMC Yukon that belonged to Pizarro. Cell-site evidence and security footage showed that Pizarro and Rivera regularly waited for hours by the shop in the Yukon. On September 20, 2016, Pizarro and Rivera entered the shop and attempted to rob Bishun using the same methods employed during the 2015 robbery. While Bishun was bound with zip ties, Bishun told Pizarro and Rivera that he was a federal informant, to which Pizarro responded angrily, "you're a fucking snitch?" Pizarro and Rivera took Bishun away from the shop, driving away in the Yukon and Bishun's BMW. They then strangled Bishun to death with a zip tie. Bishun was found dead inside his BMW in the Riverdale section of the Bronx with a zip tie around his neck.

On September 21, 2016, Pizarro met up with Samuels and Haynes at a car wash and told them that he and Rivera had not gotten any money from the robbery because Bishun told Pizarro he was a federal informant. Pizarro then indicated via a hand motion that they had killed Bishun as a result.

## II.  The Trial

In the S4 indictment filed on April 25, 2018, Pizarro and Rivera were charged with (i) conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c) ("Count One"); (ii) kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1) and 2 ("Count Two"); (iii) murder of a witness to prevent that witness from reporting a federal offense, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and (2) ("Count Three"); (iv) Hobbs Acts robbery conspiracy and attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 ("Count Four" and "Count Five," respectively); and (v) using, carrying, possessing, and brandishing firearms in furtherance of crimes of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2 ("Count Six"). Dkt. 82 (17cr151). These charges arose out of the attempted robbery, kidnapping, and murder of Bishun on September 20, 2016. For his involvement in the 2015 robbery, Pizarro was separately charged with Hobbs Act robbery conspiracy and Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 ("Count Seven" and "Count Eight," respectively), and using, carrying, possessing, and brandishing firearms in furtherance of that robbery, in violation of § 924(c)(1)(A)(i), (ii), and 2 ("Count Nine"). *Id.*

Trial began on September 11, 2018, and lasted approximately three weeks. Rivera and Pizarro put on a combined defense. Their theory was that a man named Gabriel Guillen, a drug dealer, was the real killer. Guillen had purportedly confessed to a confidential informant that he had murdered Bishun at the request of a corrupt NYPD officer, Merlin Alston, to prevent Bishun from cooperating against Alston. In support of this theory, Pizarro's trial counsel introduced two text messages and a recording between Guillen and the confidential informant, purporting to show that Guillen confessed to the murder. The government rebutted the defense's case by introducing news articles that predated the text messages and recording to establish that all the information in them about the murder was publicly known.

### III.    Post-Trial Proceedings

After the jury found Pizarro and Rivera guilty on all counts, they submitted a combined Rule 29 motion. Defendants then requested a change of counsel, which Judge Nathan granted. After new counsel appeared, each defendant filed a separate supplemental Rule 33 motion. Judge Nathan denied these motions on July 29, 2019. *Pizarro*, 2019 WL 3406603, at *13.

On July 30, 2019, Judge Nathan sentenced Pizarro and Rivera in separate proceedings. Pizarro was sentenced to 40 years on Count One; a life sentence on each of Counts Two and Three; a 20-year sentence on each of Counts Four, Five, Seven, and Eight; and a seven-year sentence on each of Counts Six and Nine, with all sentences to run concurrently except for Counts Six and Nine. Dkt. 370 at 4 (17cr151). This resulted in an overall sentence of life plus 14 years. *Id.*

Pizarro immediately appealed to the Second Circuit, arguing that all the charges against him should be dismissed with prejudice because the Government failed to disclose *Brady* materials in a timely manner. While the appeal was pending, he filed a *pro se* motion for compassionate release and a motion to vacate his conviction based on ineffective assistance of counsel. *See* Dkt. 384 (17cr151). Judge Nathan denied both, with leave to refile the motion to vacate following the resolution of his direct appeal. *See United States v. Pizarro*, 2021 WL 517740, at *1 (S.D.N.Y. Feb. 11, 2021) (denying the motion for compassionate release); *United States v. Pizarro*, 2021 WL 4665044, at *1 (S.D.N.Y. Oct. 6, 2021) (denying the motion to vacate).

On May 10, 2023, the Second Circuit denied Pizarro's appeal. *United States v. Pizarro*, 2023 WL 3332539, at *1 (2d Cir. May 10, 2023). Pizarro filed his § 2255 motion on March 27, 2024, Dkt. 1, followed by a motion for discovery on May 30, 2024, Dkt. 483 (17cr151), a Rule 60(b) motion on June 21, 2024, Dkt. 486 (17cr151), and a motion for an evidentiary hearing on January 23, 2025, Dkt. 35 (24cv2414). The Court appointed standby counsel to confer with Pizarro and to either file supplemental briefing or a letter indicating that the Court could decide these motions based on Pizarro's briefs. On February 18, 2025, Pizarro's counsel filed a letter indicating that no supplemental briefing was necessary. Dkt. 37 (24cv2414).

### LEGAL STANDARDS

Under 28 U.S.C. § 2255, a prisoner in federal custody can move the court that imposed the sentence to vacate, set aside or correct the sentence. *See* 28 U.S.C. § 2255(a). "[A] collateral attack

on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

The statute provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). "If material facts are in dispute, a hearing should usually be held, and relevant findings of fact made." *Id.* But "a petitioner may need only to identify available sources of relevant evidence rather than obtain it as in civil cases." *Id.* at 213–14. "Moreover, a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Id.* at 214.

A habeas petitioner "bears a heavy burden in establishing a right to discovery." *Ruine v. Walsh*, 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005) (discussing the right to discovery in § 2254 cases); *Pizzuti v. United States*, 809 F. Supp. 2d 164, 175–76 (S.D.N.Y. 2011) (explaining that the same is true in § 2255 cases); *see also United States v. Fields*, 761 F.3d 443, 478 n.18 (5th Cir. 2014) ("Because Rule 6 of the Rules Governing § 2254 Cases is nearly identical to Rule 6 of the Rules Governing § 2255 Cases, and both use the same 'good cause' standard, courts have looked to cases interpreting the former when applying the latter."). A petitioner is entitled to undertake discovery only when "the judge in the exercise of his discretion and for good cause shown grants leave to do so." *Lewal v. United States*, 1998 WL 425877, at *2 (2d Cir. June 9, 1998) (quoting Rule 6(a) of the Rules Governing § 2255 Proceedings). "Good cause" requires "specific allegations that give the Court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Ruine*, 2005 WL 1668855, at *6 (cleaned up). "Generalized statements regarding the possibility of the existence of discoverable material will not be sufficient to establish the requisite 'good cause.'" *Id.*

Rule 60(b), meanwhile, provides that a court may relieve a party from a final judgment, order, or proceeding for a variety of reasons. *See* Fed. R. Civ. P. 60(b). "A motion under Rule 60(b) and a petition for habeas have different objectives." *Rodriguez v. Mitchell*, 252 F.3d 191, 198 (2d Cir. 2001). "Habeas petitions seek to invalidate an underlying criminal conviction, whereas Rule 60(b) motions only seek to vacate a judgment, such as a judgment dismissing a habeas petition." *Ackridge v. Barkley*, 2008 WL 4555251, at *5 (S.D.N.Y. Oct. 7, 2008).

**DISCUSSION**

## I.    The Motions to Amend Are Granted

Pizarro's Rule 60(b) motion challenges the merits of his underlying criminal conviction. Ordinarily, this "presents a district court with two procedural options: (i) the court may treat the Rule 60(b) motion as 'a second or successive' habeas petition, in which case it should be transferred to [the Second Circuit] for possible certification, or (ii) the court may simply deny the portion of the motion attacking the underlying conviction 'as beyond the scope of Rule 60(b).'" *Harris v. United States*, 367 F.3d 74, 82 (2d Cir. 2004) (quoting *Gitten v. United States*, 311 F.3d 529, 534 (2d Cir. 2002)). However, "before a motion or petition can be regarded as successive, there must be some prior adjudication on the merits or a dismissal with prejudice." *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001). Here, the Court hasn't adjudicated the merits of Pizarro's § 2255 motion, so the Rule 60(b) motion can't be construed as a successive petition.

That leaves option two—denying the motion as beyond the scope of Rule 60(b). But here, taking this route would conflict with the Court's duty to liberally construe *pro se* submissions, *see Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001), given that Pizarro intended his Rule 60(b) motion to function as a § 2255 motion. Instead, the Court treats the Rule 60(b) motion as a motion for leave to amend the habeas petition. Additionally, Pizarro filed an addendum to his § 2255 motion, which the Court construes as a second motion for leave to amend. Dkt. 38 (24cv2414). Motions for leave to amend § 2255 motions are governed by Federal Rule of Civil Procedure 15(a), which requires that leave to amend "be freely given when justice so requires." *See Littlejohn*, 271 F.3d at 362–63. Accordingly, the Court grants Pizarro's motions for leave to amend the petition and considers the strongest arguments raised in all three motions.

## II.    The Motion for Discovery Is Denied

Pizarro seeks to serve eight interrogatories on the Assistant United States Attorneys involved in prosecuting his case, Dkt. 483 at 24–27 (17cr151), fifty interrogatories on his trial counsel, *id.* at 25–45, and eighteen interrogatories on his appellate counsel, *id.* at 46–52. Pizarro's request is denied because he fails to provide good cause for discovery.

Pizarro says that "[g]ood cause is shown because production of the requested documents will establish the validity of [his] constitutional claim" that his counsel provided ineffective assistance. *Id.* at 4–5. But he fails to support this claim with specific allegations "that give the Court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Ruine*, 2005 WL 1668855, at *6 (cleaned up). Many of the proposed interrogatories ask for information that is either publicly available, manifest in the trial record, or irrelevant to Pizarro's ineffective-assistance claims, including whether trial counsel are "licensed attorney[s]," how long they have been attorneys, and whether they were aware of the essential elements of the charges against Pizarro. Dkt. 483 at 29–30 (17cr151). Others pose legal questions, such as whether a criminal defendant is constitutionally entitled to a speedy trial and whether a superseding indictment must be presented to the same grand jury that secured the original and signed by the same foreperson. *Id.* at 36–37.

As the government points out, Pizarro's remaining requests "are based on unfounded speculation, such as asking the AUSAs about the substance of their presentations to the grand jury, whether the defense conspired with prosecutors, judges, and others to impede the investigation into Robert Bishun's murder, and about evidence that Pizarro has offered no reason to believe exists." Dkt. 491 at 4 (17cr151). "Generalized statements regarding the possibility of the existence of discoverable material [are not] sufficient to establish the requisite 'good cause.'" *Ruine*, 2005 WL 1668855, at *6; *see also id.* ("Rule 6 does not license a petitioner to engage in a 'fishing expedition' by seeking documents 'merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error.'" (citation omitted)). Moreover, for the reasons the Court explains below, Pizarro doesn't identify any evidence that, if found, would entitle him to habeas relief. Accordingly, Pizarro's motion for discovery is denied.

## III.    The Motion for an Evidentiary Hearing Is Denied

Pizarro argues that he's entitled to a hearing based on the mandatory language of 28 U.S.C. § 2255(b), which provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." But hearings are not always required. "To warrant a hearing on an ineffective assistance of counsel claim," a defendant must establish a "'plausible' claim of ineffective assistance of counsel." *Puglisi*, 586 F.3d at 213. For the reasons the Court explains below, Pizarro doesn't do that here. There are no material facts in dispute that, if proven, would entitle Pizarro to relief. Instead, "the files and records of the case conclusively show that [Pizarro] is entitled to no relief" on his claims. 28 U.S.C. § 2255(b). Accordingly, Pizarro's motion for an evidentiary hearing is denied.

## IV.    The Motion to Vacate Is Denied

Pizarro argues that this Court should vacate his sentence on two grounds: first, because he received ineffective assistance of counsel at trial and on appeal, and second, because he's actually innocent of the charges. *See* Dkt. 1 at 15, 21 (24cv2414). For the following reasons, the Court rejects these arguments.

### A.    Pizarro Fails to Establish Ineffective Assistance of Counsel

The Sixth Amendment guarantees the right to effective assistance of counsel. *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020). "To prove this right has been violated, a defendant must show (1) the attorney's representation 'fell below an objective standard of reasonableness,' and (2) there was 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). "When considering the first prong, [courts] strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, a presumption that is overcome only through a showing that counsel failed

to act reasonably considering all of the circumstances." *Jackson v. Conway*, 763 F.3d 115, 152 (2d Cir. 2014) (cleaned up). As for the second prong, "a reasonable probability is one that is sufficient to undermine confidence in the outcome, which requires a substantial, not just conceivable, likelihood of a different result." *Id.* at 153 (cleaned up).

In his brief, Pizarro says that his trial counsel provided ineffective assistance by failing to: properly impeach government witnesses; challenge the sufficiency of the government's evidence that Pizarro used an instrumentality of interstate commerce in Bishun's kidnapping; object to the government's withholding of exculpatory evidence; allow Pizarro sufficient time to review materials favorable to his defense; make certain arguments related to the zip-tie evidence; object to the government's requests to exclude time under the Speedy Trial Act; advocate for certain jury instructions; call certain witnesses; and move to dismiss the indictment on certain grounds. Pizarro's affidavit submitted in support of his motion raises a number of other purported issues, namely that Pizarro's trial counsel failed to: make a multiplicity objection; object to the case's caption; hire an investigator to track down exculpatory surveillance-video footage; retrieve *Brady* materials; arrange a psychological evaluation of Pizarro; present Pizarro's alibi at trial; notify the court that Pizarro wished to testify; present a recording of Guillen "confessing" to the murder; and request more time to review the government's late-produced *Brady* materials. Pizarro also objects to his appellate counsel's decision not to raise certain issues on appeal.

For the following reasons, Pizarro's arguments are meritless.

### 1. Witness Decisions

Pizarro argues that his trial lawyers were ineffective because they failed to conduct pre-trial interviews with witnesses, administer polygraphs to hostile witnesses, and adequately impeach government witnesses on cross-examination. Dkt. 1 at 15–18 (24cv2414). He also points to his trial counsel's failure to call certain witnesses at trial, such as a fingerprint expert, a cell-site data expert, Guillen, the confidential informant to whom Guillen allegedly confessed, Samuels (who was with Haynes and Pizarro at the car wash), and an unidentified alibi witness. *Id.* at 37–42.

These allegations are insufficient to support an ineffective-assistance claim. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). "To defeat this presumption, a convicted person must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Chambers v. Lilly*, 735 F. Supp. 3d 196, 228 (E.D.N.Y. 2024) (alteration in original) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)). Pizarro fails to make that showing.

First, a "[p]etitioner's bald assertion that counsel should have investigated . . . certain unidentified witnesses fails to overcome the presumption that counsel acted reasonably." *Wise v. United States*, 1995 WL 51113, at *3 (S.D.N.Y. Feb. 9, 1995); *see also Sloane v. Rock*, 2011 WL 2020573, at *7 (S.D.N.Y. Apr. 6, 2011) ("Petitioner's conclusory assertion that his trial counsel failed to interview an unidentified witness is not enough to support an ineffective assistance of

counsel claim."). So Pizarro's conclusory argument that his trial counsel should have investigated or conducted polygraphs of all witnesses before trial is insufficient to support an ineffective-assistance claim.

Second, "[t]he decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). The Court can't say on this record that "there is no strategic or tactical justification for" trial counsel's decision not to call the witnesses identified by Pizarro. *Id.* Trial counsel might reasonably have concluded that their testimony would have been unfavorable to Pizarro. *See Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) ("Our deference is particularly apt where . . . an attorney decides not to call an unfriendly witness to the stand and has precious little means of determining how the witness might testify."). Moreover, Pizarro provides no reason to think Guillen, Samuels, or the confidential informant were available to testify. As the government explains, the government "stipulated into evidence several pieces of otherwise inadmissible hearsay statements relating to Guillen" on the understanding that Guillen and the confidential informant would invoke their Fifth Amendment rights if called to testify. *See* Dkt. 15 at 33 (24cv2414). And Samuels, who was indicted on robbery charges related to the targeting of Bishun, declined to testify in his own defense. *See id.* at 33–34.

As for his alibi witness, Pizarro argues that his counsel should have called a witness to corroborate the fact that he was visiting his mother at the Jacobi Medical Center at the time of the 2015 robbery, but he doesn't say who that witness would be. (By the time of trial, Pizarro's mother had died. *See* Dkt. 436 (17cr151).) The record shows that Pizarro's counsel did obtain "records relating to [Pizarro's mother]" from the Jacobi Medical Center, presumably to investigate Pizarro's alibi. *See* Dkt. 435 (17cr151). Pizarro's counsel may well have had trouble finding someone to corroborate Pizarro's story. Finally, as to the cell-site or fingerprint expert, Pizarro fails to explain what favorable testimony they would have offered. Pizarro speculates that their testimony "would[] [have] help[ed] exonerate [him]," *see* Dkt. 1 at 37 (24cv2414), but conclusory allegations of this sort are "insufficient to demonstrate either that his counsel was ineffective or that any prejudice resulted." *Cromitie v. United States*, 2017 WL 1383982, at *8 (S.D.N.Y. Apr. 7, 2017).

Third, "the conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and a[] [reviewing] court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *Luciano*, 158 F.3d at 660; *see also United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (rejecting ineffective-assistance claim based on argument that trial counsel "should have done a more thorough job of impeaching two prosecution witnesses"). The record shows that Pizarro's counsel vigorously cross-examined government witnesses. In fact, trial counsel pursued some of the lines of cross-examination that Pizarro complains in his brief were lacking. For example, Pizarro argues that trial counsel should have questioned a witness about inconsistencies between prior statements to the police and statements at trial about the perpetrators' height. Dkt. 1 at 16 (24cv2414). But trial counsel did exactly that. *See* Tr. 198–202, 204.

In sum, Pizarro fails to show that trial counsel's actions with respect to witness preparation, questioning, or strategy fell outside the "wide range" of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

### 2. The Speedy Trial Act

"The Speedy Trial Act 'generally requires a trial to begin within 70 days of the filing of an information or indictment or the defendant's initial appearance.'" *United States v. Plaza-Andrades*, 507 F. App'x 22, 24 (2d Cir. 2013) (quoting *Zedner v. United States*, 547 U.S. 489, 497 (2006)). But "the Act permits district courts to order 'ends-of-justice continuances'" by making "on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial." *Id.* at 24–25 (quoting *Zedner*, 547 U.S. at 497–99).

Pizarro argues that his trial counsel provided ineffective assistance by failing to object to the government's requests to exclude time under the Speedy Trial Act. This argument fails for multiple reasons. First, the record shows that Pizarro's counsel did in fact object to ends-of-justice continuances. *See, e.g.*, Dkt. 25 at 19 (17cr151); Dkt. 36 at 11 (17cr151). Second, to the extent that Pizarro's counsel consented to these continuances, the Court can't say based on the record that there was "no tactical justification" for doing so. *See Mallet v. Miller*, 432 F. Supp. 2d 366, 383 (S.D.N.Y. 2006) (quoting *Lynn v. Bliden*, 443 F.3d 238, 242 (2d Cir. 2006)). Third, nothing in the record suggests that Pizarro's counsel's objections would have changed the outcome of the proceeding. *See* Dkt. 25 at 19–20 (17cr151) (Judge Nathan granting a continuance over Pizarro's counsel's objection).

Pizarro also argues that his appellate counsel should have raised a Speedy Trial Act challenge on appeal. *See* Dkt. 1 at 45 (24cv2414). But any challenge would have failed because Judge Nathan made "express, on-the-record findings . . . that suspension furthered the ends of justice." *See Plaza-Andrades*, 507 F. App'x at 25; *see also id.* ("District courts have 'broad discretion' in determining whether to suspend the speedy trial clock." (citation omitted)). Accordingly, Pizarro can't show that his appellate counsel's failure to raise this issue prejudiced him. *See id.* at 24 ("Because we find that the district court here did not violate the Speedy Trial Act, Plaza-Andrades cannot show that his counsel was deficient in failing to move to dismiss the indictment on this ground.").

### 3. Brady *Evidence*

Pizarro claims that his trial counsel "refused to object to the government withholding . . . evidence" that was "critical to [his] defenses." Dkt. 1 at 16 (24cv2414). As the government points out, however, "Pizarro's trial counsel *did*, in fact—vigorously and repeatedly—seek dismissal of the charges against Pizarro" and in the alternative "an adjournment of trial to allow them time to review and investigate the [g]overnment's late pretrial productions." Dkt. 15 at 25 (24cv2414); *see, e.g.*, Dkts. 105, 126 (17cr151). Ultimately, Pizarro prevailed, and Judge Nathan adjourned the trial by four months. *See* Dkt. 131 (17cr151).

Similarly, Pizarro argues that his trial counsel failed to use these late productions to argue that Guillen, and not Pizarro, murdered Bishun. Dkt. 1 at 20 (24cv2414). But the trial transcript shows

that defense counsel did exactly that. The defense's theory of the case, which was the focal point of its opening and closing arguments, was that that Guillen murdered Bishun, as demonstrated by the text messages and recording purportedly showing that Guillen confessed as much. *See* Tr. 57–61, 1648–78, 1866–91, 1912–13, 1918.

Relatedly, Pizarro argues that his trial counsel should have "ask[ed] the court for additional time outside of the already four-month a[d]journment, to prepare a proper defense for trial." Dkt. 1 at 43 (24cv2414). He also claims that after trial, his attorneys "presented [him] with additional documents," in which he "noticed exculpatory and exonerating evidence." *Id.* at 44. But he fails to explain with any specificity why a further adjournment was necessary, or what evidence he discovered. Such vague arguments can't support an ineffective-assistance claim.

### 4. Missing Evidence

Pizarro argues that his trial counsel should have tracked down and shown to the jury various pieces of exculpatory evidence, namely: (1) surveillance-video footage from the car wash where Pizarro purportedly confessed to Bishun's murder; (2) a missing police report containing Bishun's statements to Detective Eric Rivera related to the 2015 robbery; and (3) surveillance-video footage of Bishun's shop during the 2015 robbery. Dkt. 1 at 38 (24cv2414).

None of these can support an ineffective-assistance claim. First, as to the car-wash surveillance video, Pizarro provides no reason to believe that this footage exists. *See Taylor v. Poole*, 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 27, 2009) ("[A] petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation."). Indeed, it strains credulity to imagine that this video existed yet neither party tracked it down and relied on it at trial. Second, as to the missing report, Pizarro's counsel did have access to NYPD material memorializing Bishun's statements to Rivera. The government points out that the substance of those statements was the subject of motion *in limine* briefing and argument at trial. *See* Dkt. 66 at 20–21 (17cr151); Dkt. 119 at 72–82 (17cr151); *see also* Tr. 981–88; 1273. Finally, as to the surveillance footage of the 2015 robbery, Pizarro's defense counsel did obtain this video in discovery. *See* Dkt. 175-2 at 2 (17cr151). Pizarro argues that this video was exculpatory because it showed two men leaving with a bag, which, in Pizarro's view, undermines the government's argument that he left behind a clear zip-tie bag at the scene. But Pizarro's counsel could have reasonably concluded that this argument would not convince a jury and determined that the video was "unhelpful or made a strategic determination not to use it." *Taylor*, 2009 WL 2634724, at *14.

### 5. Interstate Commerce Proof

Pizarro was convicted of kidnapping under the federal kidnapping statute, 18 U.S.C. § 1201(a)(1), which requires that the government prove a defendant "willfully transported [the victim] in interstate or foreign commerce"; that the defendant "travel[ed] in interstate or foreign commerce"; or that the defendant "use[d] the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense."

Pizarro argues that his trial counsel was ineffective for failing to challenge the sufficiency of the evidence that Pizarro used an instrumentality of interstate commerce in connection with Bishun's kidnapping.

But Pizarro's counsel *did* challenge the sufficiency of the evidence on the "interstate commerce" element. In fact, Pizarro's counsel moved for a judgment of acquittal on this ground. *See* Dkt. 277 at 1 (17cr151). And Judge Nathan rejected that motion. *Pizarro*, 2019 WL 3406603, at *5–7. Accordingly, Pizarro can't meet either prong of the *Strickland* test.

### 6. *Zip-Tie Evidence*

Pizarro argues that his trial counsel was ineffective for not taking certain actions related to the zip-tie evidence from the 2015 robbery. First, Pizarro says that his counsel should have objected to the fact that affidavits submitted to obtain search warrants inaccurately referred to his fingerprints being found on a "Home Depot bag containing zip ties." *See* Dkt. 1 at 35–37 (24cv2414). Pizarro says that the government later "blatantly change[d] the 'Home Depot bag' to a 'zip tie bag.'" *Id.* at 37. Pizarro also says that his lawyers were ineffective because they failed to examine the physical zip ties found at the 2015 scene or obtain the NYPD reports concerning the collection and examination of the zip ties. *Id.* at 36.

These allegations can't sustain an ineffective-assistance claim. As the government points out, "whether the bag at issue was a 'Home Depot bag' or a 'bag purchased at Home Depot' is immaterial." Dkt. 15 at 36 (24cv2414). "The evidentiary value of the zip-tie bag found at the scene of the 2015 robbery stems not from the brand name on the bag's label, but rather from the fact that (1) Pizarro's fingerprints were found on the bag, and (2) the accompanying receipt indicates that the bag of zip ties was purchased at a Home Depot location at the same time that a man closely resembling Pizarro . . . can be seen on that Home Depot location's security camera footage purchasing the bag of zip ties." *Id.* at 37. In other words, Pizarro fails to "call into question the facts material to the legitimacy of the warrant," *see United States v. McKenzie*, 13 F.4th 223, 237 (2d Cir. 2021), so he fails to show that he was prejudiced by trial counsel's failure to make this argument.

As for the physical ties themselves, it's not clear what investigative purpose examining them would have served, and Pizarro provides no reason to think that his trial counsel's failure to do so prejudiced his case.

Finally, the record shows that Pizarro's counsel did in fact obtain the NYPD reports related to the zip ties. *See* Dkt. 384 at 108–10 (17cr151). As the government points out, Pizarro attached some of those documents to his previous *pro se* filings. *See id.* at 100–05. And at trial, Pizarro's counsel cross-examined an NYPD officer based on these documents. *See* Tr. 676. Accordingly, Pizarro can't show that his trial counsel's performance was deficient.

### 7. *Timeliness of Counts Seven, Eight, and Nine*

For his involvement in the 2015 robbery of Bishun, Pizarro was charged with Hobbs Act robbery, Hobbs Act robbery conspiracy, and using a firearm in connection with a crime of violence

under § 924(c). Pizarro argues that the government "had every opportunity to charge and arrest" him on those charges a year earlier, "yet incorporated [them] into the current indictment." Dkt. 1 at 25 (24cv2414). He argues that the government's failure to charge him earlier means that "the United States[] lacked and[/]or lost said jurisdiction over the offenses charged." *Id.* But this argument is meritless and so can't serve as the basis for an ineffective-assistance claim. As the government points out, the statute of limitations for both the Hobbs Act charges and the § 924(c) offense is five years. *See United States v. Praddy*, 725 F.3d 147, 156 (2d Cir. 2013) ("The statute of limitations on a § 924(c) offense is five years."); *Grant v. United States*, 2023 WL 5150452, at *1 (S.D.N.Y. Aug. 10, 2023) (explaining that Hobbs Acts robbery is subject to the standard five-year statute of limitations under 18 U.S.C. § 3282(a)). So the government was free to charge Pizarro in 2017 for an event that occurred in 2015.

### 8.  Challenges to the Superseding Indictment

Pizarro takes issue with the superseding indictment that expanded the charges against him. Dkt. 1 at 30 (24cv2414). He says that his trial counsel should have moved to dismiss the expanded indictment because it was signed by a different grand jury foreman, it did not "relate back" to the other indictments, and the indictment was multiplicitous. These arguments, again, can't serve as the basis for an ineffective-assistance claim because they're meritless.

First, the relation-back doctrine is relevant only when the charges in a superseding indictment aren't timely. "It is black letter law that '[o]nce an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment.'" *United States v. Salmonese*, 352 F.3d 608, 622 (2d Cir. 2003) (alteration in original) (quoting *United States v. Ben Zvi*, 242 F.3d 89, 98 (2d Cir. 2001)). "[A] superseding indictment that supplants a pending timely indictment relates back to the original pleading and inherits its timeliness as long as the later indictment does not materially broaden or substantially amend the original charges." *Id.* Here, as the government explains, "the charges in the S4 [i]ndictment would have been timely even if that had been the first charging instrument, and so whether any of those charges 'relate back' is irrelevant." Dkt. 15 at 20 (24cv2414).

Second, the government says that the same grand jury returned the S4 indictment and explains that a grand jury foreperson can change over time, or a deputy foreperson can sign. But even if a different grand jury did return the S4 indictment, "there is nothing improper with a different grand jury returning a superseding indictment absent a demonstration by Defendant . . . that the Government's use of the grand jury was improper." *United States v. Ulloa*, 2011 WL 13128610, at *4 (N.D.N.Y. May 13, 2011). And Pizarro makes no such showing here.

Third, the indictment was not multiplicitous. "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). "This violates the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once." *Id.* "To assess whether two offenses charged separately in an indictment are really one offense charged twice, courts apply the '*Blockburger* test.'" *United States*

*v. Regensberg*, 604 F. Supp. 2d 625, 632 (S.D.N.Y. 2009). "The *Blockburger* test examines whether each charged offense contains an element not contained in the other charged offense. If there is an element in each offense that is not contained in the other, they are not the same for the purposes of double jeopardy, and they can both be prosecuted." *Id.* (quoting *Chacko*, 169 F.3d at 146).

To the extent Pizarro argues that the indictment was multiplicitous because it contained multiple Hobbs Act charges based on two separate incidents, "[t]he Supreme Court long ago rejected [this] argument." *See Myton v. United States*, 2013 WL 5241227, at *5 (E.D.N.Y. Sept. 17, 2013) ("In *Callanan v. United States*, 364 U.S. 587 (1952), [the Supreme Court] concluded that two instances of extortion could be punished as separate violations of the Hobbs Act."). Moreover, each of the offenses Pizarro was charged with committing in 2016 contain an element not contained in the others. *See* Dkt. 256 at 17–70 (17cr151). Same goes for the 2015 offenses. *Id.* at 71–73. Accordingly, any multiplicity challenge to the indictment would fail.

Pizarro also argues that the grand jury was not presented with any evidence to support the charges in the indictment. This argument is "not cognizable on habeas review." *United States v. Logan*, 845 F. Supp. 2d 499, 518 (E.D.N.Y. 2012); *Cf. Costello v. United States*, 350 U.S. 359, 363 (1956) ("If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. . . . An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.").

### 9. Competence to Stand Trial

Pizarro says that he told his trial attorneys that he "was very depressed and stressed out, and [he] didn't think [he] was fit to stand trial, and that [he] was also hearing voices." Dkt. 1 at 40 (24cv2414). He argues that his trial counsel provided ineffective assistance by failing to order a psychiatric evaluation to determine whether he was competent to stand trial.

As noted above, in a habeas proceeding "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214. And here, the record contradicts Pizarro's assertion: after trial, Pizarro told pretrial services that he had no "history of mental illness." Dkt. 327 at 12 (17cr151).

But even if the Court were to credit Pizarro's statement, Pizarro fails to show that his trial counsel's failure to order a psychiatric evaluation prejudiced him. A defendant is mentally incompetent to stand trial if a "court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). Pizarro doesn't say that he was unable to understand the nature and consequences of the proceeding against him, and he had multiple exchanges with Judge Nathan in which he was clear, lucid, and indicated that he understood what

was happening. *See, e.g.*, Tr. 1643–44. Under these circumstances, it is not reasonably probable that Judge Nathan would have judged him unfit to stand trial. *See Hill v. Lewis*, 2011 WL 5024446, at *5 (E.D. Cal. Oct. 20, 2011) (holding that it was reasonable for the California Court of Appeals to conclude that "[a]bsent any other objective indicia of mental incompetency, or any evidence to suggest that defendant's alleged hearing of voices somehow rendered him incapable of understanding the proceedings or assisting in his defense," there was not "substantial evidence of a doubt as to defendant's competence" (citation omitted)).

> ### 10. Desire to Testify

Pizarro says that his defense attorneys thwarted his desire to testify in his own defense. Dkt. 1 at 39 (24cv2414). This assertion, again, is contradicted by the record. On Friday, September 21, 2018, Judge Nathan addressed Pizarro directly in the following exchange:

| The Court: | Mr. Pizarro, I want to make sure you understand . . . that you do have the right to testify in your own defense and you also have the right not to testify. If you decide not to testify, I'll instruct the jury that they may not draw any inference against you based on that decision and that fact may not enter into your deliberations. Do you understand that, sir? |
|---|---|
| Pizarro: | Yes. |
| The Court: | I want you to make sure that the decision not to testify or not is your decision. You are entitled to the best advice of your attorneys making this decision, but the decision is yours. Do you understand that? |
| Pizarro: | Yes. |
| The Court: | Ms. Macedonio and Mr. Freeman, have you discussed this issue with your client? |
| Macedonio: | Yes, I have your honor. |
| Freeman: | Yes. |
| The Court: | Have you advised him it is his decision? |
| Macedonio: | Yes. |
| Freeman: | Yes. |
| The Court: | Mr. Pizarro, what is your decision? |
| Pizarro: | I choose not to testify. |

Tr. 1643–44.

Pizarro says that after this exchange, he told his attorneys that he "had changed [his] mind, and [he] did want to take the stand in [his] own defense," yet his counsel failed to communicate that to Judge Nathan. Dkt. 1 at 39 (24cv2414). Even if this is true, Pizarro's stated desire to testify can't on its own support an ineffective-assistance claim. He still must show prejudice under *Strickland*.

*See Brown v. Artuz*, 124 F.3d 73, 80 (2d Cir. 1997). Pizarro doesn't explain what he wanted to testify about or how it would have helped his defense, so he fails to make this showing. *See id.* at 81.

### 11. Consultation With Counsel

Pizarro says that his trial and appellate counsel both failed to adequately consult with him on certain topics. First, Pizarro says that his trial counsel "failed to allow him adequate time to view [Jencks Act] materials favorable to his defense." Dkt. 1 at 16 (24cv2414). But as the government points out, "Pizarro's vague allegation on this front fails to provide any detail or concrete information about what specific material Pizarro wished to review further, or why the amount of time he and his lawyers spent reviewing Jencks Act material was not adequate," nor does Pizarro "identify any actual prejudice from the alleged inadequate time counsel spent reviewing Jencks Act material with him." Dkt. 15 at 47 (24cv2414).

Pizarro also says that his appellate counsel failed to show him her brief before filing it, despite Pizarro's request "not to submit an appeal brief on [his] behalf until [they] went over it together, to make sure all [his] constitutional issues were raised." Dkt. 1 at 44 (24cv2414). But lawyers don't have a "duty to raise every 'colorable' claim suggested by a client," *Jones v. Barnes*, 463 U.S. 745, 754 (1983), nor does failing to review a brief with a client necessarily constitute deficient performance. *See Sanchez v. Keane*, 1997 WL 599389, at *4 (S.D.N.Y. Sept. 29, 1997) (holding that lawyer provided effective assistance by filing brief that omitted certain arguments without first reviewing it with her client). This Court rejects Pizarro's claim, especially given that he fails to identify any meritorious argument or claim that would have been included in the brief if he had been involved.

### 12. Jury Instructions

Pizarro argues that his trial counsel made various mistakes as to the jury instructions. First, he says that counsel should have sought a jury instruction about the defense's theory of the case. Dkt. 1 at 19 (24cv2414). Second, he says that counsel should have sought a jury instruction that a person is innocent of conspiracy if they "pretend[] to agree." *Id.* Third, he says that counsel should have sought an instruction that "brandishing" a firearm can't sustain a conviction under § 924(c). *Id.* at 19–20.

It's not clear what jury instruction Pizarro thinks his counsel should have sought regarding his theory of the case. This alone is fatal to his ineffective-assistance claim. Without identifying the jury instruction, Pizarro can't show that there's a reasonable probability that the outcome of the proceeding would have been different. In any event, the transcript of the charge conference demonstrates that Pizarro's lawyers vigorously advocated for their client in the crafting of the jury instructions. Tr. 1685–1748. And the jury charge did ultimately contain instructions crucial to Pizarro's defense. For example, Judge Nathan instructed the jury that

> There has been testimony before you by an accomplice witness, Mr. Philip Haynes. . . . You may properly consider the testimony of such an accomplice. . . . However, because of the

interest an accomplice may have in testifying, the accomplice's testimony should be scrutinized with great care and viewed with particular caution.

Tr. 2093–94.

Moreover, in summation, Pizarro's counsel presented the theory that Guillen had murdered Bishun to prevent him from cooperating against Alston, *see* Tr. 1866–91, and argued that the government's evidence tying Pizarro to the 2015 robbery and the 2016 murder was unreliable, *see id.* at 1893–98, 1908–40. Accordingly, "[t]he district court's charge combined with defense counsel's summation . . . 'fairly put the issue'" of Pizarro's alternative-perpetrator theory to the jury. *See United State v. Jacobs*, 735 F. App'x 739, 741 (2d Cir. 2018) (quoting *United States v. Vaughn*, 430 F.3d 518, 523–24 (2d Cir. 2005)).

Nor can the omission of the instruction that a conspiracy can't be formed if one party merely "pretends to agree" serve as a basis for an ineffective-assistance claim. To find Pizarro guilty of a conspiracy, Judge Nathan instructed the jury that they had to find an "agreement or understanding between two or more people to accomplish by concerted or collective action a criminal or unlawful purpose." Tr. 2033. This instruction is legally correct and required the jury to find a "real" agreement or understanding. So Pizarro wasn't prejudiced by the omission of his proposed instruction.

Finally, any request for an instruction that "use" of a firearm requires more than "brandishing" would have been rejected as legally incorrect. *See Bailey v. United States*, 516 U.S. 137, 148 (1995) (holding that "use" in § 924(c) "certainly includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm"), *superseded by statute on other grounds, as recognized by Welch v. United States*, 578 U.S. 120, 133 (2016). Accordingly, Pizarro wasn't prejudiced by counsel's failure to request this instruction.

### 13. The Proceedings and Parties

Pizarro raises two patently frivolous claims that can't support an ineffective-assistance claim. First, he says that his trial counsel should have argued that the United States District Court for the Southern District of New York is "a non-article III unconstitutional court." Dkt. 1 at 34 (24cv2414). But "it is beyond dispute that this Court is an Article III Court." *United States v. Viertel*, 2009 WL 22863, at *11 (S.D.N.Y. Jan. 5, 2009). Second, Pizarro argues that trial counsel should have objected that the "United States of America" (as opposed to the "United States") "is not the right plaintiff" and moved for dismissal of the indictment on this ground. Dkt. 1 at 34 (24cv2414). No legal authority supports this claim, so trial counsel didn't provide ineffective assistance by failing to raise it.

### 14. Appellate Arguments

Pizarro says that his appellate counsel, Jane Meyers, provided ineffective assistance by failing to raise several additional arguments on appeal. First, he says that she should have objected to the "improper join[d]er of the 2015 Hobbs Act Robbery and the 2016 murder/kidnapping of Robert Bishun." Dkt. 1 at 43 (24cv2414). But Pizarro can't show that Meyers's failure to raise this

argument was prejudicial because Rivera raised this argument on appeal, and the Second Circuit rejected it, holding that "joinder of the counts was proper." *Pizarro*, 2023 WL 3332539, at *2.

Second, he says that Meyers should have asked for a new trial, instead of acquittal, as a remedy for the government's failure to timely produce *Brady* evidence. Dkt. 1 at 45 (24cv2414). But again, Pizarro can't show that Meyers's failure to ask for this remedy prejudiced him. The Second Circuit determined on appeal that Pizarro "fail[ed] to demonstrate any prejudice from the government's belated disclosures," given that Judge Nathan adjourned trial by four months. *See Pizarro*, 2023 WL 3332539, at *1. In other words, the court found no *Brady* violation, so Pizarro wasn't entitled to any remedy. *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001) ("There is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial . . . .").

Finally, Pizarro says that Meyers should have challenged his § 924(c) convictions as invalid under *United States v. Davis*, 588 U.S. 445 (2019). Section 924(c) makes it a crime to carry a firearm in connection with a crime of violence. The statute defines a "crime of violence" in two separate clauses, known as the "elements clause" and "residual clause." *See Davis*, 588 U.S. at 449. The elements clause defines a crime of violence as one that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The residual clause defines a crime of violence as one "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B). In *Davis*, the Supreme Court held that the residual clause is unconstitutionally vague, leaving the government to rely on the elements clause. *See* 588 U.S. at 470.

To find Pizarro guilty on Count Six, the jury had to find that he used a firearm in connection with "[t]he 2016 attempted robbery." Dkt. 272 at 3 (17cr151). For Count Nine, the predicate offense was the completed 2015 robbery. *Id.* at 5.

Pizarro's ineffective-assistance claim fails as to Count Nine because any argument that the 2015 robbery wasn't a crime of violence under § 924(c) would have failed. The Second Circuit has held that a completed Hobbs Acts robbery constitutes a crime of violence under the elements clause. *See United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023) ("[C]ompleted Hobbs Act robberies are categorically crimes of violence pursuant to [§] 924(c)(3)(A).")

As for Count Six, the Supreme Court clarified in *United States v. Taylor*, 596 U.S. 845 (2022), that attempted Hobbs Act robbery doesn't constitute a crime of violence under the elements clause. *Id.* at 851. Accordingly, Pizarro's substantive argument as to Count Six has merit.

But that doesn't mean that Meyers's performance was deficient under *Strickland* because she failed to raise this argument on appeal. "[A]ppellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To prove that appellate counsel acted unreasonably by omitting an argument on appeal, a petitioner must "show[] that counsel omitted significant and obvious issues while pursuing issues that were clearly and

significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). "In assessing the attorney's performance, a reviewing court must judge [her] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess [her] strategy choices." *Id.* (quoting *Strickland*, 466 U.S. at 690).

Here, at the time Meyers submitted her merits brief, Pizarro was serving two concurrent life sentences, plus two consecutive seven-year sentences on his § 924(c) convictions. Meyers filed her brief on January 20, 2022, six months before the Supreme Court decided *Taylor*, so it wasn't yet clear that Count Six was based on an invalid predicate. To the contrary, Second Circuit precedent at the time foreclosed the argument. *See United States v. McCoy*, 995 F.3d 32, 56–57 (2d Cir. 2021) (holding that Hobbs Act attempted robbery qualifies as a crime of violence under the elements clause), *vacated sub nom. by McCoy v. United States*, 142 S. Ct. 2863 (2022). Even if Meyers could have anticipated that *McCoy* might be overturned because the Supreme Court had granted certiorari in *Taylor*, securing a win on Count Six wouldn't have changed anything for Pizarro, given that it wouldn't have altered his aggregate term of imprisonment. Accordingly, the Court finds that Meyers acted reasonably by focusing in her brief on the government's untimely *Brady* disclosures at trial and attempting to secure a dismissal of the indictment on that ground.

Even if Meyers's performance was deficient, the Court would decline to review the validity of Pizarro's conviction on Count Six under the concurrent-sentence doctrine, which allows courts to "decline to review the merits of a claim on collateral review when the challenged conviction's sentence runs consecutively to one or more unchallenged life sentences." *Al-'Owhali v. United States*, 36 F.4th 461, 463 (2d Cir. 2022). "The doctrine is a 'rule of judicial convenience,'" which allows courts to "conserve[] judicial resources when, 'regardless of the outcome, the prisoner will remain in jail for the same length of time.'" *Id.* at 466 (first quoting *Kassir v. United States*, 3 F.4th 556, 561 (2d Cir. 2021); and then quoting *Benton v. Maryland*, 395 U.S. 784, 799 (1969)). Courts have "discretion to apply the doctrine when . . . (1) the collateral challenge will have no effect on the time the prisoner must remain in custody and (2) the unreviewed conviction will not yield additional adverse collateral consequences." *Id.* at 467.

Both are true here. Pizarro is currently serving two concurrent life sentences for murder and kidnapping that resulted in death. Vacatur of Count Six, which carries a seven-year sentence that runs consecutively to these life sentences, would "have no effect on the time he must serve in prison." *Id.* Additionally, "there is 'no meaningful possibility' that the unreviewed conviction will subject [Pizarro] to a 'substantial risk of adverse collateral consequences,'" given that Pizarro's "life sentences are all without parole"; "it is unlikely that [Pizarro] will be subject to a 'recidivist statute for a future offense'" since he's "already in prison for life,"; it "is unlikely" the conviction could be used to impeach him at a future trial for the same reason; and a firearms conviction is "unlikely to subject [him] to a 'societal stigma,'" especially in comparison to his conviction for murder. *Id.* at 468 (quoting *Kassir*, 3 F.4th at 568). Accordingly, were the Court to find that Meyers's performance was deficient, it would nonetheless decline to review Pizarro's conviction under the concurrent-sentence doctrine.

### 15. Rule 60(b) Motion and Addendum

Pizarro's Rule 60(b) motion is largely duplicative of his habeas petition, except for one issue. Pizarro challenges the probable cause for a search warrant because the affidavit in support described his cell phone as being "in the vicinity of the location where Robert Bishun's body was eventually discovered." Dkt. 486 at 7 (17cr151). To the extent Pizarro argues that his trial counsel was ineffective for failing to challenge the fruits of the warrant on that ground, this argument fails because such a motion would have been meritless. The government explains that "the cell[]phone location evidence at trial was consistent with the affidavit description," and, in any event, the affidavit contained "substantial additional evidence" supporting a finding of probable cause. Dkt. 491 at 2 (17cr151). Accordingly, Pizarro provides no reason to think that his trial counsel provided ineffective assistance by failing to challenge probable cause for the search warrant.

Pizarro's "addendum" to his § 2255 motion also repeats many of the same arguments (or variations of the arguments) he made in his original motion, and the new arguments he raises lack merit, so they can't serve as the basis for an ineffective-assistance claim. For example, Pizarro says that the court lacked subject-matter jurisdiction over his case, *see* Dkt. 38 at 4 (24cv2414), but this argument fails because Pizarro was charged with (and convicted of) federal crimes. *See United States v. Radin*, 821 F. App'x 53, 54 n.1 (2d Cir. 2020) ("The courts below plainly had subject-matter jurisdiction over the criminal proceeding against Radin, because the offenses with which she was charged are federal crimes."). He also argues that the S4 indictment did not sufficiently inform him of the charges against him because it didn't name all his co-conspirators, Dkt. 38 at 16–17 (24cv2414), but "it is the grand jury's statement of the 'existence of the conspiracy agreement rather than the identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet." *United States v. Piccolo*, 723 F.2d 1234, 1239 (6th Cir. 1983) (quoting *United States v. Davis*, 679 F.2d 845, 851 (11th Cir. 1982)); *see also United States v. Wright*, 825 F. App'x 676, 679 (11th Cir. 2020) ("Wright's indictment was sufficient as to the conspiracy charge even though it . . . did not list his co-conspirators by name.").

Finally, Pizarro argues that Count Three of the S4 indictment—murder of a witness to prevent that witness from reporting a federal offense—is duplicitous because it "charg[es] 18 U.S.C. § 1111(a)," murder, "inside of the already distin[c]tive charge of [18] § 1512," tampering with a witness, victim, or an informant. Dkt. 38 at 22 (24cv2414). The witness-tampering statute makes it a crime to "kill another person" with the intent to "prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(a)(1)(C). The indictment specified that "killing" under this statute "is murder as defined in [18 U.S.C. §] 1111(a)." Dkt. 82 at 3 (17cr151). There was nothing duplicitous about this charge given that "[§] 1512 incorporates the definition of murder in 18 U.S.C. § 1111." *United States v. Tyler*, 956 F.3d 116, 123 (3d Cir. 2020); *see also United States v. Kandic*, 134 F.4th 92, 99 (2d Cir. 2025) ("[A]n indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of [the] requirement that there be a separate count for each offense, and 2) the defendant is prejudiced thereby." (second alteration in original) (quoting *United States v.*

*Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001))). Relatedly, Pizarro argues that Judge Nathan erred by instructing the jury that, to convict Pizarro of murder, it had to find that Pizarro acted "with malice aforethought." Tr. 2054. Pizarro says that Judge Nathan should also have instructed the jury that murder requires "premeditated killing." Dkt. 38 at 24 (24cv2414). But this instruction would have been legally erroneous. *See United States v. Capers*, 20 F.4th 105, 128–29 (2d Cir. 2021) (rejecting argument that a killing constitutes murder under § 1111(a) only if it is premeditated).

In sum, Pizarro fails to raise a plausible claim that he was denied effective assistance of counsel in either of his supplemental motions.

### B. Pizarro's Actual-Innocence Claim Is Not Cognizable and, In Any Event, Fails on the Merits

Pizarro argues that he is actually innocent of all the charges because he did not participate in the robbery, kidnapping, or murder of Bishun. "To this day, '[w]hether . . . a federal right [based on a claim of actual innocence] exists is an open question." *Jimenez v. Stanford*, 96 F.4th 164, 183 (2d Cir. 2024) (alterations in original) (quoting *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 71 (2009)). The Supreme Court has "merely assumed without deciding that '*in a capital case* a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional,' but concluded that the petitioner in that case had fallen 'far short' of making that demonstration." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 417–19 (1993)). This alone is a basis for denying Pizarro's actual-innocence claim. *See Pizzuti v. United States*, 2014 WL 4636521, at *45 (S.D.N.Y. Sept. 16, 2024) ("[A]ny actual innocence claim fails because neither the Supreme Court nor the Second Circuit has recognized a freestanding claim of actual innocence as a basis for habeas relief.").

But even if this claim were cognizable, Pizarro falls short of meeting the standard of proof that would be required. "In *Herrera* and its progeny, [the Supreme Court] decided only that whatever the standard of proof, it is 'extraordinarily high.'" *Jimenez*, 96 F.4th at 187 (quoting *Herrera*, 506 U.S. at 417). As the Second Circuit explained, "no court has *ever* found it met." *Id.*

This wouldn't be that first case. Pizarro points to no evidence that clears the "extraordinarily high" bar to cast doubt on his conviction. As Judge Nathan detailed in her opinion denying Pizarro's post-trial motions, there was significant physical and testimonial evidence tying Pizarro to the 2015 robbery and the 2016 murder, including Haynes's testimony, testimony from surviving victims of both incidents, surveillance footage, cell-site data, fingerprint evidence, and social media, cell phone, and internet records. *See Pizarro*, 2019 WL 3406603, at *1–3. Nothing Pizarro points to meaningfully undermines this evidence. Accordingly, even it were cognizable, Pizarro's actual-innocence claim would fail on the merits.

Finally, to the extent that Pizarro argues he's innocent of Count Six based on the Supreme Court's decision in *Taylor*, the Court construes this as an argument that *Taylor* created a new substantive rule of criminal law that is available to Pizarro on collateral review. *See Teague v. Lane*, 489 U.S. 288, 307–10 (1989) (plurality opinion) (discussing exceptions to the "general rule of nonretroactivity for cases on collateral review"); *Montgomery v. Louisiana*, 577 U.S. 190, 198

(2016) ("[C]ourts must give retroactive effect to new substantive rules of constitutional law [on federal collateral review]."); *see also Hall v. United States*, 58 F.4th 55, 62 (2d Cir. 2023) (holding that *Davis* created a new substantive rule of constitutional law that applies retroactively to petitioners who seek collateral review of their convictions). The Court declines to reach this issue under the concurrent-sentence doctrine for the reasons explained above—namely, that Pizarro's aggregate term of imprisonment won't change, regardless of the validity of his conviction on Count Six, nor will his conviction yield additional adverse collateral consequences. *See Al-'Owhali*, 36 F.4th at 467.

### C.  No Certificate of Appealability Will Issue

Under 28 U.S.C. § 2253(c)(1), "an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255" unless a judge issues a certificate of appealability. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "The standard for issuing the certificate of appealability is whether 'jurists of reason would find it debatable whether the petition states a valid claim.'" *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (quoting *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)). The Court declines to issue a certificate of appealability because Pizarro hasn't made a substantial showing that he was denied effective assistance of counsel or that his conviction violated a freestanding constitutional right based on actual innocence. Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

### CONCLUSION

For these reasons, Pizarro's motions are DENIED.

The Clerk of Court is respectfully directed to terminate Dkts. 476, 483, 486, and 511 on 17cr151 and Dkts. 1, 10, 11, and 35 on 24cv2414. The Clerk of Court is additionally directed to close 24cv2414.

SO ORDERED.

Dated: May 15, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge